ROBSON & EVANS *v.* WEIL.

ATKINSON, J. N. J. Weil, trading under the name of N. J. Weil & Co., instituted suit against R. C. Robson and Samuel Evans, trading as partners under the firm name of Robson & Evans, for breach of contract. The defendants filed a demurrer on general and special grounds, and excepted to the judgment overruling it. An answer was also filed. On the trial, after the conclusion of evidence introduced by both sides, the

judge, on motion, directed a verdict in favor of the plaintiff for a stated sum as principal and specified interest, and entered judgment thereon. The defendants excepted. Two writings were set out in the petition, as follows:

"Chicago, Dec. 14th, 1909. Dear Sirs:—We have this day bought from N. J. Weil & Co., Chicago, Ill.

| Article | Delivery | Average | Price |
|---|---|---|---|
| 50000 D S extra ribs | b/o. Jany. | 30/40 | at 13.00 CAF. |

and carrying charges of 10 cts. per 100 lbs. additional each month or part thereof. The buyer agrees to deposit with the seller ½ ct. per lb. as security for performance of the contract, and, in case of decline in market, such further amount as may be necessary to protect the contract ½ ct. per lb. below the market. Subject to the rules of the Board of Trade of Chicago.　　　　　　　　　　Robson & Evans."

"Chicago, Mar. 4, 1910. Dear Sirs:—We have this day bought from N. J. Weil & Co., Chicago, Ill.

| Article | Delivery | Average | Price |
|---|---|---|---|
| 25000# D S Extra Ribs | buyer's option March. | 30/35 at 13.50 CAF. | |

and 10 cents per 100# for each additional month or part of month as carrying charge. The buyer agrees to deposit with them ½ cent per pound as security for performance of contract, and, in case of decline in market, such further amount as may be required to keep contract protected ½ cent per pound. Subject to the rules of the Board of Trade, Chicago.　　　　　　Robson & Evans, R. C. Robson."

It was alleged, in the petition as amended, that by the terms of these writings Robson & Evans contracted with petitioner to purchase designated quantities of described meat at stated prices per pound. "At the same time and under the same contract said Robson & Evans agreed to pay a carrying charge of 10 cents per 100 pounds each month thereafter while said merchandise was kept in the possession of the plaintiff, the said Robson & Evans having the right to order out the same or any part thereof at any time at their option." Petitioner held the meat, under the terms of the contract, subject to the order of Robson & Evans, as specified in the first writing, until October 4, 1910; and the meat as specified in the second writing, until October 12, 1910; holding the same from the date of the respective writings subject to the order of Robson & Evans. On the dates last mentioned, Robson & Evans having failed and refused to pay for the meat in accordance with the terms of the contract, petitioner, after having, on September 20, 1910, advised defendants of his intention to do so, sold the meat in open market in the City of Chicago, Ellsworth & Cross of that city becoming the purchasers at the highest and best price obtainable at that time. Before Robson & Evans made any effort or expressed any intention to repudiate the writing, and before petitioner resold the meat, or notified the defendants of the intention to do so, they, in pursuance of the writing above set forth, paid petitioner the sum of $625.00, and the "payment was by plaintiff credited on the contract price of said meat." The price at the time the meat was sold was less than the contract price, and the amount sought to be recovered was the sum representing the difference between the contract price and that at which the meat was sold, plus designated

sums to cover the stipulated "carrying charges," with interest on the amounts from the respective dates of resale. *Held:*

1. Standing alone, the writings set out in the petition were not signed by Weil & Co., and on that account were unilateral, amounting to no more than offers to buy. *Simpson* v. *Sanders*, 130 *Ga.* 265 (60 S. E. 541); *Mallett* v. *Watkins*, 132 *Ga.* 700 (64 S. E. 999, 131 Am. St. R. 226). But it being alleged that both parties acted upon the writings, Robson & Evans paying $625 on the purchase-price of all the meat, and Weil receiving the sum as such part payment, and holding the meat subject to be ordered out by Robson & Evans, while the proposal to buy was held open, the feature of mutuality was thus introduced; and the petition was not demurrable on the ground that the writings were without consideration and merely unilateral. *Sivell* v. *Hogan*, 119 *Ga.* 168 (46 S. E. 67); *Brown* v. *Bowman*, 119 *Ga.* 153 (46 S. E. 410); *Owenby* v. *Georgia Baptist Assembly*, 137 *Ga.* 698 (74 S. E. 56, 27 Ann. Cas. (1913B) 238).

(*a*) This ruling is not in conflict with the decision in *Neely* v. *Stevens*, 138 *Ga.* 305 (75 S. E. 159), where certain bales of cotton were delivered under a contract for a larger number of bales, and the money paid by the purchaser was not part payment of the whole number contracted for, but in full payment for the number delivered.

2. An executory agreement for the sale of goods to be delivered at a future date is valid; and such a transaction will not be declared invalid on the ground of being a gambling contract, unless it is made to appear that neither of the parties contemplated an actual delivery, and it was the intention of both that there should be no actual delivery, but on the day fixed for delivery there should be a settlement of differences based on the market value of the goods on that day. *Stewart* v. *Postal Telegraph Co.*, 131 *Ga.* 31 (61 S. E. 1045, 18 L. R. A. (N. S.) 692, 127 Am. St. R. 205); *Daniel* v. *Reeves*, 139 *Ga.* 646 (77 S. E. 1067); *McFarlane* v. *Robertson*, 137 *Ga.* 132 (73 S. E. 490). It does not appear from the allegations of the petition that both parties contemplated mere settlement of differences, based on the market value, without actual delivery of the meat.

3. The grounds of special demurrer were met by amendment.

4. The plaintiff having brought suit against the defendants based on the two writings above set forth, and copies of the writings being attached to the petition, it was not competent for the plaintiff to testify as to what was the contract of sale. The order given by the defendants being signed by them only, it was competent to show a parol acceptance by the plaintiff, and such action thereunder as should bind the defendants. But a mere general statement in parol that the plaintiff made a specified contract with the defendants was not competent, nor did it purport to be explanatory of certain abbreviations appearing in the written order on the part of the defendants on which the suit was based. A repetition of the parol testimony as to the contract made was likewise objectionable; but it was competent to explain the designation of the meat referred to in the writing.

5. If there was a breach of contract upon the part of Robson & Evans by refusal to carry out its terms, Weil would be authorized, after such breach, to sell the meat for the account of the buyer (Civil Code § 4131),

after giving notice to the buyer for a reasonable time of the intention to sell. *Davis Sulphur Ore Co.* v. *Atlanta Guano Co.,* 109 *Ga.* 607 (34 S. E. 1011). What would be a reasonable time would be a question for the jury. *Bearden Mercantile Co.* v. *Madison Oil Co.,* 128 *Ga.* 695 (58 S. E. 200); Taylor *v.* Louisville Public Warehouse, 24 Ky. Law R. 1656 (72 S. W. 20).

6. The judge erred in directing a verdict for the plaintiff.

> *Judgment reversed.   All the Justices concur.*
> SEPTEMBER 21, 1914.

Action for breach of contract. Before Judge James B. Park. Baldwin superior court. January 16, 1913.

*Hines & Vinson* and *W. H. Burwell,* for plaintiffs in error.
*Allen & Pottle,* contra.