DAVIS SULPHUR ORE CO. *v.* ATLANTA GUANO CO.

If a vendor and vendee make an executory contract whereby the former sells to the latter certain goods for which the latter agrees to pay at a time subsequent to the date of delivery ; and if, before the time fixed for the delivery of the goods, the vendee becomes insolvent and the vendor stops the goods in transitu and resells them for less than the contract price, and thereupon brings an action against the vendee for the difference between the contract price and the price realized upon the resale, his declaration is fatally defective, unless it alleges either that he gave the vendee notice of his intention to resell, or that he made a tender of the goods and demanded payment and the vendee refused to take the goods or to pay for them.

Argued December 6, 1899. — Decided January 27, 1900.

Complaint.     Before Judge Reid.     City court of Atlanta. June 17, 1899.

*James H. Gilbert*, for plaintiff.
*Abbott, Cox & Abbott*, for defendant.

SIMMONS, C. J.     The Davis Sulphur Ore Company entered into a written contract with the Atlanta Guano Company, whereby it sold to the latter certain sulphur ore, the guano company agreeing to pay for the same at a certain time after delivery at the port of Charleston or Port Royal, South Carolina, or Savannah, Georgia.     The ore was purchased in Europe and transported by water to this continent.     Before its arrival in this country, the vendor ascertained that the vendee had become insolvent, and it exercised its right to stop the ore in transit. Before its arrival at the port of destination, the vendor resold it for some $1,600 less than the price agreed on in the contract with the guano company.     The ore company then brought suit against the guano company for the difference between the contract price and the price received on the resale, alleging in substance the above-stated facts.     The declaration showed that the goods were never tendered to the guano company or demand for payment made, and there was no allegation that any notice of the second sale or of the intention to resell was ever given to the guano company, the original vendee.     The latter demurred to the declaration on several grounds, one of them be-

ing that it set out no cause of action.   The trial judge sustained the demurrer, and the plaintiff excepted.

Under our Civil Code (§ 3551) and the common law, the vendor has three remedies when he sells goods and the vendee refuses to take and pay for them:   "The seller may retain them and recover the difference between the contract price and the market price at the time and place of delivery; or he may sell the property, acting for this purpose as agent for the vendee, and recover the difference between the contract price and the price on resale; or he may store or retain the property for the vendee and sue him for the entire price."   If the vendor elects to take the second remedy, and resells the goods at the vendee's risk, and the sale is properly made after due notice to the vendee of the intention to resell, and the goods bring less than the contract price, the vendee is conclusively bound by the resale and the amount realized by it.   Unless the vendee has notice of the intention to resell, he is not bound by the amount realized, and this is right upon both principle and justice.   The vendor acts as the agent of the vendee in making the sale, and sells at the vendee's risk; and it would be unjust to hold the vendee bound except where he has had notice of the intention of the vendor to resell.   If the vendee has notice he may attend the sale, if a public one, and see that it is fair, or, whether the sale be public or private, he may be able to bring about competition or to secure a purchaser who will give the full value of the goods.   He may be able in other ways to prevent loss to himself.   Some of the cases hold that the resale is in the nature of an adjudication against the vendee, when he has had full notice, as to the value of the goods at the time of such resale.   If this be so, it is certainly necessary that the vendee should have notice of the sale. It is said in the American notes in Bennett's 7 Am. ed. of Benjamin on Sales, p. 826, "Notice to the buyer of the time and place of resale is usual, and is important as tending to prove the sale a fair one; but it is not absolutely necessary in all cases that such notice should have been given.  .  .   But although a notice of *the time and place* of resale may not be absolutely necessary, it is now generally thought that the vendor should inform the buyer that he intends to exercise his right of resale

and hold him responsible for the difference in price." It was held in the case of *Green* v. *Ansley*, 92 *Ga.* 647, that it was absolutely necessary to give notice of the intention to resell, but not of the time and place of the resale. In that case it was said: "In order to conclude the defendant in this manner, not only must it appear that the resale was made without unreasonable delay, with the same publicity and as far as possible under the same conditions as the first, and with an honest effort to get the best price obtainable, but it must appear also that the defendant had notice that the sale was to be at his risk. The property resold at his risk is regarded as in some sense his own, and the result of the resale is in the nature of an adjudication against him; and before he should be charged with the deficiency, he should be afforded an opportunity to protect his interest and prevent a sacrifice of the property. Unless notice is given him that the property is held and will be sold at his risk, he has a right to assume, if it is sold again, that the vendor elected to retain and deal with it as his own and at his own risk." It is true that the property resold in that case was land, but it is stated in the opinion that the same principle applies to the resale of personalty. In the case of Leonard *v.* Portier, 15 S. W. Rep. 414, the Texas Court of Appeals held that, "On a refusal to accept goods tendered in performance of an executory contract of sale, the seller must give notice of his intention to resell, in order to bind the purchaser for the difference between the contract price and the price obtained on a resale, and notice must be alleged in a petition which demands judgment for such difference." In Newmark on Sales it is stated that "in order to entitle the vendor to proceed by resale, instead of by rescission or by action for the whole price, he must manifest his election by preliminary notice of his intention to sell, stating in terms or effect that he will assert his right of resale and bind the buyer by the price obtained and hold him for the loss sustained." See, to the same effect: 2 Sutherland, Damages (2d ed.), § 647, t. p. 1432, and cases cited; 2 Addison, Contracts (Morgan's ed.), § 593. These authorities clearly show that the vendee is not bound for the difference between the contract price and the price on the resale, unless he has notice of the vendor's

intention to resell and to hold him bound for the difference, or unless his refusal to take the goods when tendered or to pay for them has rendered the notice superfluous.   For this last reason, in the case of *McCord* v. *Laidley*, 87 *Ga.* 221, the vendees were held bound by the price realized on the resale.   There the vendor tendered the goods and made demand for payment,· and the vendees refused to take the goods or pay for them; while in the present case the goods were never tendered, no demand for payment was ever made, and the goods were resold before the time for payment or that for delivery had arrived.   See, on this branch of the subject, Burdick on Sales, p. 230, and cases cited. It may be said that the above cases and citations apply only to the case of a solvent vendee who refuses to accept and pay for goods, and that they do not apply to cases where the vendee has become insolvent after the purchase or where the vendor has exercised his right of stoppage in transitu.   We can not see that either of these circumstances should affect the question of notice.   If the vendee becomes insolvent, he ought in justice and good morals to refuse to accept goods for which he can not pay.   When the vendor stops the goods in transitu, it appears from the authorities that such stoppage does not amount to a rescission of the contract but puts the vendor back in possession of the goods to hold them, not only to protect his lien for the purchase-money, but also as in the nature of a pledge. When he afterwards exercises his right to resell, he does so as the agent of the vendee and at the latter's risk.   In 2 Morgan's Addison on Contracts, § 605, in treating of the rights of the vendor where the vendee has become insolvent or bankrupt after the purchase, it is said:   "The assignees of the bankrupt purchaser are entitled to call upon the vendor to deliver the goods on being paid or tendered the price; but, if they refuse to take and pay for the goods, the vendor will be entitled to resell them in the same way that he is entitled to resell in ordinary cases after the refusal of a purchaser to take and pay for the things he has ordered and bought."   The insolvency of the purchaser may relieve the vendor of the necessity of tendering the goods and demanding payment, but notice of an intention to resell is still required.   And where, because of the insolvency

of the vendee, no tender or demand has been made, there is nothing which brings the case within the doctrine of *McCord* v. *Laidley*, supra, and does away with the necessity of notice. In the present case the petition did not allege that any notice of an intention to resell or of the resale was given the vendee, and we think the court properly sustained the demurrer thereto.

*Judgment affirmed. All the Justices concurring.*